IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Conrad A. Burke, )
    Petitioner, )
   )
v. ) 1:12cv755 (LMB/TCB)
   )
Harold Clarke, )
    Respondent. )

## MEMORANDUM OPINION

Conrad A. Burke, a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of a disciplinary conviction.[1] On September 17, 2012, respondent filed a Rule 5 Answer accompanied by a Motion to Dismiss and supporting brief. Petitioner was given the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and filed a reply on September 25, 2012. Accordingly, this matter is now ripe for disposition. For the reasons that follow, respondent's Motion to Dismiss will be granted, and the petition will be dismissed.

### I. Background

Petitioner is confined at Sussex I State Prison. Pet. 2, ECF No. 1. On October 15, 2011, petitioner was placed in a special housing unit ("SHU") for a matter unrelated to the incident that gives rise to this petition. Mot. Dismiss Ex. A at 22, ECF No. 6-1. On November 21, 2011,

---

[1] Petitioner does not challenge his underlying state court conviction. Rather, he challenges the duration of his sentence based on the loss of good time credits following his disciplinary conviction. The Fourth Circuit has held that such claims are cognizable in 28 U.S.C. § 2254 habeas petitions. See Royster v. Polk, 299 Fed. App'x 250, 251 (4th Cir. 2008) ("Because [petitioner] challenges the loss of good time credits, [his] action at its core seeks to shorten the length of his confinement. Therefore, the action sounds in habeas."); see also Reaves v. Hester, No. 2:12cv003, 2012 WL 2865987, *2 (E.D. Va. July 11, 2012) (holding that § 2254 is the exclusive remedy for a state prisoner challenging "something other than his conviction," such as loss of good time credits).

petitioner was charged with tampering with security equipment or devices. Id. Specifically, a reporting officer reported on a Disciplinary Offense Report form that petitioner "had his tray-slot open and had it blocked with a towel so the tray-slot couldn't be closed." Id. at 19. On December 19, 2011, a disciplinary hearing was held at Sussex II State Prison, and a Hearings Officer found petitioner guilty. Id. Petitioner received a penalty of "loss of good time up to 180 days good time allowance or equivalent earned sentence credits and up to 30 days of disciplinary segregation." Id. Petitioner appealed the determination to the Warden and to the Virginia Department of Corrections Regional Administrator, both of whom upheld the conviction. Id. at 22–25. Petitioner did not appeal the substantive charge but the procedures surrounding the disciplinary hearing. Id. He alleges that (1) the hearing should have been within fifteen days of being served with the charge; (2) the Hearings Officer was biased; (3) petitioner could not hear the proceeding; (4) the penalty was excessive; (5) he was not given credit for pre-hearing detention (6) he was not provided with an advisor (7) the charging document was not timely served; (8) the hearing was not fair; (9) he did not sign the Disciplinary Offense Report; and (10) the description of the offense does not list a location. Id. at 24.

Petitioner filed a petition for writ of habeas corpus in the Supreme Court of Virginia on April 30, 2012. R. No. 120728. The Supreme Court dismissed the petition on June 15, 2012 after determining that habeas corpus did not lie in the matter. Id. Petitioner filed the instant petition on July 9, 2012. Pet. 1, ECF No. 1.

## II. Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas petition, a federal court may not grant the petition based on the claim unless the state court's adjudications

are contrary to, or an unreasonable application of, clearly established federal law, or are based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). The evaluation of whether a state court decision is "contrary to" or "an unreasonable application of" federal law is based on an independent review of each standard. See Williams v. Taylor, 529 U.S. 362, 412–13 (2000). A state court determination runs afoul of the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Id. at 413. Under the "unreasonable application" clause, the writ should be granted if the federal court finds that the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. Importantly, this standard of reasonableness is an objective one. Id. at 410. Under this standard, "[t]he focus of federal court review is now on the state court decision that previously addressed the claims rather than the petitioner's free-standing claims themselves." McLee v. Angelone, 967 F. Supp. 152, 156 (E.D. Va. 1997), appeal dismissed, 139 F.3d 891 (4th Cir. 1998) (table).

### III. Analysis

A. Due Process

In his first two claims, petitioner alleges that officials at Sussex I violated his Fourteenth Amendment right to due process by violating disciplinary hearing procedures. It is well established that prisoners cannot be subjected to arbitrary discipline by prison officials. See Howard v. Smyth, 365 F.2d 428 (4th Cir. 1966). When a loss of statutory good-time credits or solitary confinement is at issue, the Supreme Court has mandated procedural safeguards for

3

prison disciplinary hearings, including advance written notice of charges, written findings, and an opportunity—when consistent with institutional safety and correctional goals—for the inmate to call witnesses and present evidence in his defense. Wolff v. McDonnell, 418 U.S. 539, 563–67 (1974). Here, officials at Sussex I did not violate petitioner's due process rights under Wolff.

1. Hearing

Petitioner claims that his disciplinary hearing was not held within fifteen calendar days as required by the rules and procedures that govern inmate disciplinary proceedings. Pet. Att. 1, ECF No. 1. However, in a sworn affidavit, the Hearings Officer who presided over his hearing, Carmen Rodgriquez, states that petitioner's "hearing was held in accordance with [Operating Procedure] 861.1[,]" which outlines procedures surrounding offender discipline. Rodriquez Aff. ¶ 9, ECF No. 6-2; see also Encl. A at 24, ECF No. 6-2 (copy of Operating Procedure 861.1) ("If offender has NOT been placed on [Pre-Hearing Detention] for the Disciplinary Offense Report, the hearing should be held . . . no later than 30 calendar days after service of the *Disciplinary Offense Report*, unless a valid reason exists.") (emphasis in original). Petitioner was not placed in Pre-Hearing Detention for the incident that gave rise to the disciplinary hearing on December 19; he was in a segregated housing unit for an unrelated incident. Rodriguez Aff. ¶ 5, ECF No. 6-2. Because the hearing was held within thirty days, the time period required by Operating Procedure 861.1, petitioner's due process rights were not violated.

2. Service of Charging Document

Petitioner also claims that staff at Sussex I did not serve him with a copy of the disciplinary offense report by midnight of the following day, November 22, 2011, as required by Inmate Discipline Rule 861.1. Pet. Att. 2, ECF No. 1. He alleges that he received a copy of the

4

report on November 23, 2011, one day late. Id. However, Hearings Officer Rodriquez states that a "review of the security camera showed that Burke's charge was in fact served on him on November 22, 2011." Rodriguez Aff. ¶ 4, ECF No 6-2. The Disciplinary Offense Report that describes the violation—that petitioner "had his tray-slot open and had it blocked with a towel so the tray-slot couldn't be closed"—is signed by petitioner and states that the date he was provided a copy of the report was November 22, 2011. Mot. Dismiss Ex. A at 19, ECF No. 6-1. Because officials timely served petitioner with a copy of the document, his due process rights were not violated.

B. Cruel and Unusual Punishment

In his third claim, petitioner alleges that the penalty imposed as a result of the Hearings Officer finding him guilty—loss of up to one hundred eighty days of good time credit—and defendant's failure to credit the twenty-six days he spent in segregated confinement toward his punishment, constitute cruel and unusual punishment. Pet. Att. 4, ECF No. 1. The Supreme Court has recognized that "[t]he Eighth Amendment's bar on inflicting cruel and unusual punishments . . . 'proscribe[s] more than physically barbarous punishments.' It prohibits penalties that are grossly disproportionate to the offense as well as those that transgress today's broad and idealistic concepts of dignity, civilized standards, humanity and decency." Hutto v. Finney, 437 U.S. 678, 685 (1978) (citations omitted). While it is well-settled that a Virginia inmate has a liberty interest in the opportunity to earn good time credits while incarcerated, Brown-El v. Virginia Parole Bd., 948 F. Supp. 558 (E.D. Va. 1996), the forfeiture of such credits is permitted where an inmate has violated prison rules and regulations, Va. Code § 53.1-189 (West 2012).

5

Here, despite petitioner's allegations, he received an appropriate and proportionate punishment for his offense per Operating Procedure 861.1, which explains that a penalty consisting of the loss of up to one hundred eighty days of good time credit is applicable when an inmate is found guilty of tampering with a security device. Rodriquez Aff., Encl. A at 11, ECF No. 6-2. Furthermore, Hearings Officer Rodriguez states that prison "[r]ecords reflect that [petitioner] was appropriately credited with all of his disciplinary segregation time." Id. at ¶ 6. Rodriguez explains that the twenty-six days that petitioner spent in segregation prior to the hearing were not credited toward his penalty because he was being housed in that unit for an unrelated incident. Id. Because neither part of petitioner's penalty was grossly disproportionate to the offense, his claim of cruel and unusual punishment will fail.

C. Bias

Petitioner alleges that Hearings Officer Rodriguez was "biased" and "lied to prevent from providing me a hearing where I could hear and cross-examine my accuser." Pet. Att. 4, ECF No. 1. He claims that Rodriguez "stated I threw feces on her and other stuff which is a lie and it's nothing [sic] in my prison record to support such allegations made that I ever assaulted any staff. . . ." Id.

As respondent points out in his Motion to Dismiss, courts need not accept "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations." Custer v. Sweeney, 89 F.3d 1156, 1163 (4th Cir. 1996) (citing Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, 317–18 (2d ed. 1990)). Here, petitioner offers no support for his allegation that Rodriguez was biased in his petition. Contrary to petitioner's claims, Rodriquez cites petitioner's "history of throwing feces on me and

other staff" as the reason for holding the hearing in his housing unit while was in his cell with the tray slot closed. Rodriguez Aff. ¶ 7, ECF No. 6-2. In his Response to respondent's Motion to Dismiss, Petitioner denies throwing feces on Rodriguez or any officer and alleges, confusingly, that Rodriguez "couldn't stand to be fair and render just decision due to her allegations of being assaulted by petitioner." However, in Burke v. Clarke, 1:12cv324-LMB-TCB, petitioner previously filed in this Court another petition for a writ of habeas corpus challenging institutional disciplinary proceedings. In that case, the disciplinary infraction at issue was intentionally throwing/smearing/pouring/discarding food/trash/bodily waste, and it was predicated on an incident where petitioner threw two cups of feces into the pod. The Court granted Respondent's Motion to Dismiss the petition in that case by Order dated October 23, 2012.[2]

As to petitioner's claim that he could not hear the proceeding, Rodriguez states that petitioner participated and answered several questions throughout the hearing. Id. Even though petitioner claims holding hearings are not commonly held on cell blocks, Resp. 3–4, ECF No. 8, Operating Procedure 861.1 does not prohibit staff from holding a hearing in a housing unit. Because petitioner's claims of bias concerning Rodriguez are unfounded, petitioner is not entitled to relief on that claim.

D. Insufficient Evidence

Petitioner alleges that Rodriguez's decision to find petitioner guilty was based on insufficient evidence. Pet. Att. 5, ECF No. 1. Specifically, he claims that Rodriguez based the

---

[2] It is well established that a court may take judicial notice of its own records and files, whether it is requested to do so or not. Fed. R. Evid. 201. Judicial notice is particularly applicable to a court's own records of prior litigation which is closely related to the matter under consideration. Chandler v. O'Bryan, 311 F. Supp. 1121 (D.C. Okla.), rev'd on other grounds, 445 F.2d 1045 (10th Cir.), cert. denied, 405 U.S. 964 (1972); accord, Lolavar v. De Santibanes, 430 F.3d 221, 224 n.2 (4th Cir. 2005) (taking judicial notice of the docket sheet of a court of record); Fletcher v. Bryan, 175 F.2d 716, 717 (4th Cir. 1949) (where justice requires, "court should not hesitate to look to its own records to see what they disclose . . .").

decision solely on the basis of the reporting officer's testimony and that Rodriguez "would not accept any evidence petitioner presents [sic] because she doesn't feel reporting [officer] would lie." Id.

When an inmate challenges the sufficiency of evidence underlying a revocation of good time credits, due process requirements are met when "the findings of the prison disciplinary board are supported by some evidence in the record." Superintendent v. Hill, 472 U.S. 445, 454 (1985). Here, contrary to petitioner's allegations, Rodriguez states that petitioner "did not ask to submit any documentary evidence or gather any evidence to dispute the disciplinary charge. I did not prohibit [petitioner] from submitting evidence in this case." Rodriguez Aff. ¶ 8, ECF No. 6-2. Furthermore, Rodriguez states that "I do not automatically believe or disbelieve any person's testimony. I listen to the witnesses, review all of the evidence[,] and make credibility determinations and judgments based on the evidence before me." Id. at ¶ 10. Petitioner's claim that Rodriguez based the decision on the reporting officer's testimony alone is unfounded.

## IV. Conclusion

For the above-stated reasons, the respondent's Motion to Dismiss will be granted, and this petition will be dismissed. An appropriate Order shall issue.

Entered this 26 day of November 2012.

/s/ 
Leonie M. Brinkema
United States District Judge

Alexandria, Virginia

8